IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALEXANDER DIXON : CIVIL ACTION
:
v. :
:
LAW OFFICE OF J. SCOTT WATSON : NO. 17-5236
P.C. :

MEMORANDUM

Bartle, J. February 5, 2018

Plaintiff Alexander Dixon brings this lawsuit under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., against defendant, Law Office of J. Scott Watson P.C. ("JSW"). Before the court is the motion of JSW to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I

When considering a motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

On a motion to dismiss under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). The court may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

II

For present purposes, we accept as true the allegations set forth in the complaint. Dixon is a former student of Drexel University. JSW is a debt collector. On August 19, 2012 Dixon signed into Drexel University's online "banner system" for the first time from the zip code 22308. This is the zip code for Alexandria, Virginia.[1] On this date and

---

1. Dixon resided in Alexandria, Virginia with his parents. In addition to signing into the banner system from this zip code,

from this zip code, Dixon electronically accepted Drexel University's terms and conditions set forth in the Student Financial Obligations and Tuition Repayment Agreement ("Tuition Repayment Agreement"). The Tuition Repayment Agreement provided, in relevant part:

> I understand that once I am registered for course(s) and/or participating in the Cooperative Education Program at Drexel University, I become solely responsible for payment of the resulting tuition, fees and any other balances pursuant to the Student Financial Obligations and Tuition Repayment Agreement. . . . This Agreement shall constitute a promissory note obligating me to pay all outstanding balances due to Drexel University.
> . . .
> I hereby acknowledge that I have read this Agreement and understand it. By clicking on the I Agree button below, I am consenting to be bound by this Agreement which shall serve as a promissory note, thereby obligating me to pay all outstanding balances due to Drexel University.

Dixon also logged into the banner system four additional times, each time from the Philadelphia zip code 19104: September 24, 2012, December 19, 2012, April 1, 2013, and July 15, 2013.

On November 16, 2016 JSW filed a lawsuit on behalf of Drexel University in the Court of Common Pleas of Philadelphia County to collect an outstanding payment of $36,639.39 from

---

he also signed and submitted the application for Drexel University from this zip code, received an acceptance letter, and it was the zip code from which he submitted his tuition and housing non-refundable deposits.

Dixon. At the time of the filing, Dixon resided in the state of Washington. On November 22, 2016 Dixon was served by JSW via regular and certified mail in Alexandria, Virginia.[2]

The underlying lawsuit proceeded to arbitration. Dixon did not appear at the arbitration, although an attorney appeared on his behalf. A judgment was entered against Dixon in excess of $38,000. Dixon appealed this judgment.[3]

On July 11, 2017, JSW mailed a letter to Dixon in which JSW identified himself as a debt collector in connection with the underlying lawsuit and attached a proposed "Stipulation and Settlement Agreement" between Dixon and Drexel University. This Settlement Agreement set forth the schedule and manner of payment of the judgment and attorneys' fees and costs by Dixon to Drexel University. Dixon did not execute the Settlement Agreement.

The instant action was filed by Dixon on November 11, 2017.

III

Dixon first alleges that JSW has violated § 1692i of the FDCPA by bringing the underlying debt collection action in the improper venue of Philadelphia.

---

2. The complaint here does not state whether service in Virginia was contested.

3. The complaint here does not allege the date of the arbitration or the outcome of this appeal.

The purpose of the FDCPA is:

> [T]o eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e). To state a cause of action under the FDCPA, a plaintiff must allege that: "(1) [Plaintiff] is a consumer, (2) the defendant is debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014) (citing Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 232 (3d Cir. 2005)).

Section 1692i governs the venue in which a debt collector may bring an action on a debt against any consumer. It provides, in relevant part, that any "debt collector who brings any legal action on a debt against any consumer shall . . . in the case of an action [not seeking to enforce an interest in real property], bring such action only in the judicial district or similar legal entity (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action." 15 U.S.C. § 1692i(a). This provision was adopted by Congress to address

"the problem of forum abuse, an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to appear, hence permitting the debt collector to obtain a default judgment." Hess v. Cohen & Slamowitz, LLP, 637 F.3d 117, 120 (2d Cir. 2011) (quoting S.Rep. No. 95-382, at 5 (1977)) (internal quotation marks omitted).

At this stage of the proceedings we must accept as true the allegations in the complaint. Dixon avers that he, a consumer, lived in the state of Washington on the date that JSW, a debt collector, filed the underlying debt collection lawsuit and JSW does not dispute this. Thus Philadelphia was the not the place where he resided at the time. See § 1692i(a)(2)(B).

JSW instead maintains that venue was proper in Philadelphia under § 1692i(a)(2)(A), which allows the suit to be brought where the consumer signed the contract. JSW argues that Philadelphia meets this requirement because the Tuition Repayment Agreement did not become binding and effective until Dixon registered for classes here at Drexel University. According to JSW, Dixon was located in Philadelphia, in zip code 19104, when he registered for classes.

JSW's argument is misplaced. Accepting as true Dixon's allegations, he signed the Tuition Repayment Agreement

-6-

in Alexandria, Virginia.  At this stage, that ends the discussion.

JSW further argues that through a forum selection clause in the Tuition Repayment Agreement, Dixon consented to be sued in Philadelphia for any disputes arising out of the Agreement.  We find this argument unpersuasive.  Considering the congressional purpose in enacting the venue provision, the Tuition Repayment Agreement cannot supersede the FDCPA.  See Hess, 637 F.3d at 120.

Accordingly Dixon has stated a claim under § 1692i(a)(2)(A) and the motion of JSW to dismiss on this ground will be denied.

IV

Dixon alleges that the Second Clause of the proposed Settlement Agreement communicated to him by JSW was false and misleading and threatened action that could not legally be taken, in violation of § 1692e of the FDCPA.  The Second Clause of the Settlement Agreement stated:

> The payment of the aforementioned sum of $38,483.87 shall be paid by [Dixon] through the tender of consecutive monthly payments of $100.00 due on the 28th day of each and every month commencing on July 28, 2017 until the Stipulation amount is paid in full or until January 28, 2018 when the account will be reviewed for a possible increase in payment.

The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute defines specific conduct that violates § 1692e and provides that violations are not limited to the conduct enumerated in the statute. See id. The FDCPA must be broadly construed to give full effect to its remedial purposes. Kaymark v. Bank of America, N.A., 783 F.3d 168, 174 (3d Cir. 2015).

Our Court of Appeals has explained that the least sophisticated debtor or consumer standard must be applied in determining whether a statement is false or deceptive:

> The least sophisticated debtor standard requires more than "simply examining whether particular language would deceive or mislead a reasonable debtor" because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor. This lower standard comports with the basic purpose of the FDCPA: as previously stated, to protect "all consumers, the gullible as well as the shrewd," "the trusting as well as the suspicious," from abusive debt collection practices.

Brown v. Card Serv. Cent., 464 F.3d 450, 454 (3d Cir. 2006) (internal citations omitted). The standard is an objective one. Jensen v. Pressler & Pressler, 791 F.3d 413, 419 (3d Cir. 2015). The statute presumes "a basic level of understanding and willingness to read with care" by the debtor in order to

-8-

"prevent[] liability for bizarre or idiosyncratic interpretation of collection notices[.]"  Brown, 464 F.3d at 454.

JSW first contends that since Dixon did not accept the Settlement Agreement, he suffered no injury and thus he does not have standing.  In Spokeo, Inc. v. Robins, a case involving the Fair Credit Reporting Act, the Supreme Court reiterated the standing requirement:

> Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements.  Lujan, 504 U.S., at 560, 112 S.Ct. 2130.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision. . . .  To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S. at, 560, 112 S.Ct. 2130 (internal quotation marks omitted).

136 S.Ct. 1540, 1547-48 (2016).  The injury must be "de facto" in order to be concrete.  Id. at 1548.  That is, the injury must actually exist.  "The risk of real harm" can also satisfy the concreteness test.  Id. at 1549.

As we have previously noted, the overriding purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  The injury to Dixon alleged here is the deceptive and misleading statement by JSW to

-9-

Dixon in an effort to settle the debt obligation to Drexel University.  The Second Clause of the proposed Settlement Agreement that sets forth a payment schedule with review for possible increases in payment at the very least creates unnecessary fear and anxiety on the part of Dixon that he could be bound to an unknown increases in payment.  This is a de facto injury and thus Dixon has standing to bring the action.  See In re Nickelodeon Consumer Privacy Litig., 827 F.3d 262, 273-74 (3d Cir. 2016).

JSW next contends that even if Dixon has standing, his claims should be dismissed since it only has one reasonable interpretation and thus the proposed Settlement Agreement is not false, deceptive, or misleading under § 1692e.

As we have previously stated, the purpose of the FDCPA includes eliminating abusive debt collection practices by debt collectors.  15 U.S.C. § 1692(e).  Our Court of Appeals has concluded that "[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." Brown, 464 F.3d at 455 (internal quotation marks and citation omitted).  Additionally, the statement must be material in order to be actionable under § 1692e.  Jensen, 791 F.3d at 421.  It must have the "potential to affect the decision-making process of the least sophisticated debtor[.]"  Id.

Dixon argues that the Second Clause of the Settlement Agreement is false, deceptive, and misleading in that the least sophisticated consumer would be confused as to what he would be obligated to pay after January 28, 2018, if anything, and the consequence that would occur if the consumer refused the new monthly payment amount. Dixon further suggests that the Second Clause arbitrarily requires a possible increase in payments without defining how this increase will be determined, at what amount, and by whom. According to him, this satisfies the false, deceptive, and misleading standard of the FDCPA.

We find that the least sophisticated consumer could reasonably interpret the language of the Second Clause in more than one way. See Brown, 464 F.3d at 455. Thus the settlement offer from JSW is deceptive and misleading under the FDCPA. As the court in this district has previously noted in denying a motion for judgment on the pleadings under the FDCPA, "the central question is whether the facts in [the plaintiff's] complaint, if proven, could support a jury's conclusion that the hypothetical least sophisticated debtor would be deceived or misled[.]" Mushinsky v. Nelson, Watson & Assocs., LLC, 642 F.Supp. 2d 470, 472 (E.D. Pa. 2009). The allegations here, if proven, can support a jury's finding that the least sophisticated debtor would be deceived or misled.

Dixon has alleged sufficient facts to state a claim under § 1692e of the FDCPA. Accordingly the motion of JSW to dismiss the complaint on this ground will be denied.