```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

ALEXANDER DIXON                :         CIVIL ACTION
                               :
        v.                     :
                               :
J. SCOTT WATSON P.C.           :         NO. 17-5236
                               :

MEMORANDUM

Bartle, J.                                          August 7, 2018

Plaintiff Alexander Dixon brings this action against debt collector J. Scott Watson P.C. ("JSW") alleging violations of two provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. First, Dixon alleges that JSW violated the venue provision of the FDCPA, § 1692i, by bringing an underlying debt collection action against Dixon in the Court of Common Pleas of Philadelphia County. Next, Dixon alleges that a proposed settlement agreement offered to Dixon by JSW violated § 1692e of the FDCPA, which prohibits debt collectors from using false, deceptive, or misleading representations in connection with the collection of a debt.

Before the court are the cross motions of the parties for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

I

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See id. at 252. We view the facts and draw all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

II

The following facts are not in dispute. On March 5, 2012, Drexel University extended an offer of admission to Alexander Dixon. The offer letter was sent to Dixon's residence in Alexandria, Virginia, with the zip code 22308. The letter notified Dixon that in order to reserve his place in the class, he was required to complete and return by May 1, 2012 an Enrollment Form with a $300 non-refundable deposit and $200 non-refundable housing deposit. Dixon timely completed these requirements.

On June 19, 2012, Dixon logged into Drexel's "banner system" on the internet for the first time using his assigned

student ID number.  On this date he accepted the "Student Financial Obligations and Tuition Repayment Agreement" by clicking the "I Agree" button on the screen.  The banner system recorded Dixon's location at the zip code 22308 in Virginia.  The Tuition Repayment Agreement provided, in relevant part:

> I understand that once I am registered for course(s) and/or participating in the Cooperative Education Program at Drexel University, I become solely responsible for payment of the resulting tuition, fees, and any other balances pursuant to the Student Financial Obligations and Tuition Repayment Agreement. . . . This Agreement shall constitute a promissory note obligating me to pay all outstanding balances due to Drexel University.
>
> . . .
>
> I hereby acknowledge that I have read this Agreement and understand it.  By clicking on the I Agree button below, I am consenting to be bound by this Agreement which shall serve as a promissory note, thereby obligating me to pay all outstanding balances due to Drexel University.

The banner system recorded Dixon signing into the system four additional times, all from the zip code 19104 in Pennsylvania: September 24, 2012, December 19, 2012, April 1, 2013, and July 15, 2013.  On September 24 when Dixon logged onto the banner system for the second time, he registered for classes for the fall 2012 semester.  After Dixon made various payments on his bill, he owed a total of $9,727.86 for the fall term.  Dixon also later registered for classes for the winter 2012 term

and the spring 2013 term from the zip code 19104. Again, he was charged for tuition and other items for each term. Dixon subsequently withdrew from the spring 2013 classes within the time period allotted by University policy. Drexel did not require him to pay tuition for that semester. As of November 16, 2016, Dixon owed $36,639.39 to Drexel University.

On this date, November 16, 2016, JSW filed a breach of contract action in the Court of Common Pleas of Philadelphia County on behalf of Drexel University to recover the outstanding balance owed to it. The complaint avers, in relevant part:

> As is set forth in the Transactions by Term Report . . . there remains an outstanding balance of $36,639.39.
>
> . . .
>
> Pursuant to the Financial Obligations and Tuition Repayment Agreement attached hereto as Exhibit "B", the Defendant is liable to Plaintiff for collection costs and attorney's [sic] fees in the event that legal action is required to recover any outstanding balance.
>
> . . .
>
> Defendant has breached his contract with Plaintiff by failing to repay these monies.

On this date when the action was filed, Dixon did not reside in Pennsylvania.[1]

---

1. Dixon contends that he resided in the state of Washington on November 16, while JSW maintains it believed at the time that

On July 7, 2017 Dixon spoke with Bryan Schultz, a collections supervisor at JSW. Schultz explained to Dixon that he could pay the balance owed to Drexel over time on a monthly basis pursuant to a Stipulation and Settlement Agreement. Schultz further explained to Dixon that in a case such as this, JSW and the consumer would revisit the Settlement Agreement every six months to determine whether the consumer had the ability to increase his or her monthly payments. Schultz sent a Stipulation and Settlement Agreement to Dixon on July 11, 2017 for his review. Dixon again spoke with Schultz on July 21, 2017 about the document. Ultimately, Dixon did not sign the Settlement Agreement.

The underlying action proceeded to arbitration in accordance with the arbitration program of the Common Pleas Court of Philadelphia County. A judgment was entered on August 17, 2017 against Dixon and in favor of JSW in the amount of $41,735.87. Dixon appealed this judgment. On May 17, 2018 a bench trial took place in the Court of Common Pleas and judgment was entered in favor of JSW and against Dixon in the amount of $43,486.80. On June 18, 2018, Dixon appealed this judgment to the Pennsylvania Superior Court. On August 3, 2018, the

---

Dixon resided in Virginia. Regardless, it is undisputed that he did not reside in Pennsylvania on November 16, 2016.

Superior Court granted the application of Drexel University to "quash/dismiss" the appeal.

On November 21, 2017, while the underlying action was ongoing in the Pennsylvania court system, Dixon filed the instant action against JSW alleging violations of the FDCPA.

III

The purpose of the FDCPA is:

> [T]o eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e). Due to its remedial purpose, the FDCPA "must be broadly construed in order to give full effect to these purposes." Caprio v. Healthcare Revenue Recovery Grp., LLC 709 F.3d 142, 148 (3d Cir. 2013). All "communication giving rise to [an] FDCPA claim [is analyzed] from the perspective of the least sophisticated debtor." Kaymark v. Bank of America, N.A., 783 F.3d 168, 174 (3d Cir. 2015) (quoting Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008)) (internal quotation marks omitted).

Section 1692i governs venue of actions brought by debt collectors. It provides, in relevant part:

>     (a)  Any debt collector who brings any legal
>          action on a debt against a consumer
>          shall —
>
>  . . .
>
>       (1)  in the case of an action not
>            described in paragraph (1)
>            [paragraph (1) concerns actions
>            involving an interest in real
>            estate], bring such action only in
>            the judicial district or similar
>            legal entity —
>
>            (A)  in which such consumer signed
>                 the contract sued upon; or
>
>            (B)  in which such consumer
>                 resides at the commencement
>                 of the action.

The parties agree that the underlying debt collection action was not an action seeking to enforce an interest in real property as described in § 1692i(a)(1).

Dixon maintains he is entitled to summary judgment on his claim that JSW violated § 1692i since JSW brought the underlying action in Pennsylvania, which was neither the judicial district where the contract being sued upon was signed, or the judicial district where he resided at the commencement of the underlying action. Dixon is correct. It is undisputed that he signed the Tuition Repayment Agreement on June 19, 2012 in Virginia when he clicked the "I Agree" button and he did not reside in Pennsylvania on November 16, 2016, the date the

underlying action was initiated. JSW's attempt to contort the statute and facts is without merit.

Accordingly, we will enter judgment in favor of Dixon and against JSW on Dixon's claim for violation of § 1692i since JSW commenced the debt collection action in a venue not permitted under the statute.[2]

IV

Genuine disputes of material fact exist as to the remainder of the allegations in the complaint. Thus we will deny the motions of Dixon and JSW for summary judgment with respect to any remaining claims alleged by Dixon.

---

2. JSW argues for the first time in its reply brief in support of its motion for summary judgment that the doctrine of issue preclusion bars Dixon from now contesting the venue of the underlying action. This eleventh hour argument comes too late.