IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ALEXANDER DIXON | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| J. SCOTT WATSON, P.C. | : | NO. 17-5236 |

MEMORANDUM

Bartle, J.                                            August 28, 2018

         This is an action brought by plaintiff Alexander Dixon, a former student of Drexel University, against debt collector defendant J. Scott Watson, P.C. ("JSW"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. Before the court is the motion of the defendant JSW for reconsideration of this court's order dated August 7, 2018.

         In that order, the court granted the motion of Dixon for summary judgment against defendant JSW on plaintiff's claim for violation of 15 U.S.C. § 1692i for bringing the underlying state court debt collection action in Pennsylvania instead of Virginia.[1] JSW contends that the state court had previously determined that the contract in issue was entered into in

---

1. In that same order, the court otherwise denied the motion of Dixon for summary judgment and denied the motion of JSW for summary judgment. See Doc. # 51. That part of the order is not in issue here.

Pennsylvania and as a result the court had erred in finding that venue in Pennsylvania was improper.

I

To succeed on a motion for reconsideration, a party must show at least one of the follow: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 667 (3d Cir. 1999). JSW relies on subparagraph (3).

II

JSW maintains that it had previously argued that the doctrine of issue preclusion bars Dixon's claim for violation of 15 U.S.C. § 1692i. In our August 7, 2018 memorandum accompanying the order of that date, we did not address this contention. Accordingly, we now turn to the doctrine of issue preclusion with respect to Dixon's claim for violation of § 1692i regarding venue.

Section 1692i governs venue of actions brought by debt collectors. It provides, in relevant part:

> (a) Any debt collector who brings any legal action on a debt against a consumer shall —
>
>   . . .

>                (2)  in the case of an action not
>                     described in paragraph (1)
>                     [paragraph (1) concerns actions
>                     involving an interest in real
>                     estate], bring such action only in
>                     the judicial district or similar
>                     legal entity —
>
>                     (A)  in which such consumer <u>signed
>                          the contract sued upon</u>; or
>
>                     (B)  in which such consumer
>                          <u>resides at the commencement
>                          of the action</u>.

15 U.S.C. § 1692i(a) (emphasis added).  As we have previously stated, the parties agree that the underlying debt collection action filed in the Court of Common Pleas of Philadelphia County was not an action seeking to enforce an interest in real property as described in § 1692i(a)(1).

The doctrine of issue preclusion ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979).  Issue preclusion exists when: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior

judgment." In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992) (quoting In re Braen, 900 F.2d 621, 628-29 n. 5 (3d Cir. 1979)).

III

We set forth as provided to us the relevant undisputed facts leading to the underlying action as well as undisputed relevant portions of the record of the underlying action.

On March 5, 2012, Drexel University extended an offer of admission to Alexander Dixon. The offer letter was sent to Dixon's residence in Alexandria, Virginia, with the zip code 22308. The letter notified Dixon that in order to reserve his place in the class, he was required to complete and return by May 1, 2012 an Enrollment Form with a $300 non-refundable deposit and $200 non-refundable housing deposit. Dixon timely complied with these requirements.[2]

On June 19, 2012, Dixon logged into Drexel's "banner system" on the internet for the first time using his assigned student ID number. On this date he accepted the Student Financial Obligations and Tuition Repayment Agreement ("the Tuition Repayment Agreement") by clicking the "I Agree" button on the screen. The banner system recorded Dixon's location at the zip code 22308 in Virginia. The Tuition Repayment Agreement provided, in relevant part:

---

2. The record is unclear whether Dixon mailed in a deposit or paid the deposit online.

-4-

> I understand that once I am registered for
> course(s) and/or participating in the
> Cooperative Education Program at Drexel
> University, I become solely responsible for
> payment of the resulting tuition, fees, and
> any other balances pursuant to the Student
> Financial Obligations and Tuition Repayment
> Agreement. . . . This Agreement shall
> constitute a promissory note obligating me
> to pay all outstanding balances due to
> Drexel University.
>
> . . .
>
> I hereby acknowledge that I have read this
> Agreement and understand it. By clicking on
> the I Agree button below, I am consenting to
> be bound by this Agreement which shall serve
> as a promissory note, thereby obligating me
> to pay all outstanding balances due to
> Drexel University.

The banner system recorded Dixon signing into the system four additional times, all from the zip code 19104 in Pennsylvania: September 24, 2012, December 19, 2012, April 1, 2013, and July 15, 2013. On the first three of these dates Dixon logged into the banner system to register for classes for the fall 2012, winter 2012, and spring 2013 terms, respectively.[3] After he made various payments due to Drexel, he owed a total of $9,727.86 for the fall 2012 term. He was charged for tuition and other items for each term.

Dixon later withdrew from the spring 2013 classes within the time period allotted by University policy. Drexel

---

3. The record does not show what Dixon did when he logged in on July 15, 2013.

did not require him to pay tuition for that semester.  As of November 16, 2016, Dixon owed $36,639.39 to Drexel.

On November 16, 2016, Drexel filed a breach of contract action against Dixon in the Court of Common Pleas of Philadelphia County to recover an outstanding balance owed to it by Dixon.  The complaint averred, in relevant part:

> As is set forth in the Transactions by Term Report . . . there remains an outstanding balance of $36,639.39.
>
> . . .
>
> Pursuant to the Financial Obligations and Tuition Repayment Agreement attached hereto as Exhibit "B", the Defendant is liable to Plaintiff for collection costs and attorney's [sic] fees in the event that legal action is required to recover any outstanding balance.
>
> . . .
>
> Defendant has breached his contract with Plaintiff by failing to repay these monies.

It is undisputed that Dixon did not reside in Pennsylvania on the date that the action was instituted.[4]

On January 30, 2018, Dixon filed in Common Pleas Court a motion for "leave to file an amended answer or preliminary objection, or for <u>forum non conveniens</u>" on the ground that the Court of Common Pleas of Philadelphia County was not the proper

---

4. Dixon contends that he resided in the state of Washington on November 16, while JSW maintains it believed at the time that Dixon resided in Virginia.  Regardless, it is undisputed that he did not reside in Pennsylvania on that date.

venue under state and federal law.  The court denied the motion on February 23, 2018 without stating its reasons.

The underlying action proceeded to arbitration in accordance with the court arbitration program of the Common Pleas Court of Philadelphia County.  A judgment was entered on August 17, 2017 against Dixon and in favor of Drexel in the amount of $41,735.87.  As was his right, he obtained a trial de novo in the Court of Common Pleas.  During the bench trial, the discussion by the court and the parties and the testimony by the witnesses centered on when the parties <u>entered</u> <u>into</u> the Tuition Repayment Agreement.[5]  The court distinguished between two different documents at issue in the trial.  The first was the offer for admission extended to Dixon by Drexel on March 5, 2012 and Dixon's subsequent completion of the accompanying Enrollment Form and non-refundable deposits on May 1, 2012.  The second was the Tuition Repayment Agreement, which was the subject of Drexel's action against Dixon.  While the court found that Dixon was bound by the Tuition Repayment Agreement, there was no discussion by the court of when or where Dixon <u>signed</u> it.

---

5.  Dixon argued that the terms of the Tuition Repayment Agreement were not disclosed to him prior to his offer for admission, acceptance of admission, and tender of non-refundable deposit.  In addition, Dixon challenged the late fees and attorneys' fees that Drexel imposed on him as a result of not paying tuition.

-7-

During the trial, Dixon's signing the Tuition Repayment Agreement was referenced only once by a collection specialist from Drexel. He testified that Dixon "agreed – he signed this agreement prior to any registration for the fall being available in the [Drexel University banner] system."

Ultimately, judgment was entered in favor of Drexel and against Dixon in the amount of $43,486.80 due pursuant to the Tuition Repayment Agreement. On June 18, 2018, Dixon appealed this judgment to the Pennsylvania Superior Court. On July 19, 2018 he filed a Statement of Errors with the Common Pleas Court. It provided:

> Whether the trial court erred in ruling that the governing enforceable contract between parties was not formed with the exchange of March 5th 2012, [sic] "Offer of Acceptance Letter," followed by the monetary consideration tendered by the Appellant, mirroring the explicit words of the March 5th Offer, and with issuance of Confirmation/Receipt May 1st 2012 [sic] letter indicating that monetary consideration tendered by the Appellant was applied as payment towards the final product bargained for (tuition, housing and fees).

On August 3, 2018, the Superior Court granted the application of Drexel to "quash/dismiss" the appeal. There is no dispute that the judgment in the state court is final. Meanwhile, on November 21, 2017 Dixon had filed the instant federal action against JSW, Drexel's debt collector.

-8-

IV

As noted above, there is no dispute that Dixon did not reside in Pennsylvania at the time that the underlying action was commenced. See 15 U.S.C. § 1692i(a)(2)(B). In addition, based on the underlying complaint, it is clear that the <u>contract sued upon</u> was the Tuition Repayment Agreement. See 15 U.S.C. § 1692i(a)(2).

The issue before the Court of Common Pleas was simply whether Dixon entered into the Tuition Repayment Agreement with Drexel. In contrast, the issue before this court pursuant to 15 U.S.C. § 1692i(a)(2)(A) is not whether he entered into the Agreement but where he "<u>signed</u> the contract sued upon" (emphasis added). A bilateral contract involves a meeting of the minds of at least two parties, who as here may be in different locations. Delivery must also be accomplished. <u>Restatement</u> (Second) of Contracts § 8.6; <u>Franklin Interiors v. Wall of Fame Mgmt. Co.</u>, 511 A.2d 761, 763 (Pa. 1986). Where one party signed a contract is a different question than where or whether the parties formed or entered into a contract. Based on the record before us, the issue "actually litigated" in the state court was not where Dixon signed that Agreement. <u>In re Graham</u>, 873 F.2d at 1097.

JSW points to Dixon's January 30, 2018 motion for "leave to file an amended answer or preliminary objection, or

-9-

for <u>forum</u> <u>non</u> <u>conveniens</u>" on the ground that the Court of Common Pleas of Philadelphia County was the improper venue pursuant to state and federal law.  The state court denied this motion on February 23, 2018 without stating its reasons.  The doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> serves the purpose of "provid[ing] the court with a means of looking beyond technical considerations such as jurisdiction and venue to determine whether litigation in the plaintiff's chosen forum would serve the interests of justice under the particular circumstances."  <u>Shears v. Rigley</u>, 623 A.2d 821, 824 (Pa. Super. Ct. 1993) (quoting <u>Alford v. Phil. Coca-Cola Bottling</u>, 531 A.2d 792, 794 (Pa. 1987)).  Notably, in its motion in Common Pleas Court, Dixon contended that Philadelphia "is not even where consumer was located <u>when the underlying contract was entered into</u>" (emphasis in original).  The court denied Dixon's motion without any opinion.  There is no evidence that in deciding the venue motion the state court relied on or considered § 1692i of the Fair Debt Collection Practices Act or decided or was concerned with where Dixon <u>signed</u> the Tuition Repayment Agreement.

JSW also points to Dixon's Statement of Errors filed on July 19, 2018 in the Common Pleas Court following the entry of judgment against him.  Again, this Statement of Errors does not raise the issue of where Dixon signed the Tuition Repayment Agreement.  In addition, the trial court did not make the

-10-

explicit ruling that Dixon suggests in the Statement of Errors. Rather, during the trial Dixon contended that the terms of the Tuition Repayment Agreement were not disclosed to Dixon as part of his offer from Drexel and acceptance, and thus Dixon should not be bound by all of the terms of it. The court ruled against Dixon. Again, the issue of where Dixon <u>signed</u> the contract was not "actually litigated." In re Graham, 973 F.2d at 1097. We reiterate that the place where and the time when parties entered into and formed a contract is not the same issue as where and when one of the parties signed it.

It is clear from the record of the underlying state court action that the trial court concluded that there was a contract between the parties. It did not make any decision about where Dixon signed it.

V

JSW next contends that the court committed clear error by finding that Dixon "entered into a contract with Drexel for the payment of tuition in Virginia on June 19, 2012." In fact, this court did not make any finding that Dixon entered into a contract with Drexel in Virginia. Indeed, this court never used the words "entered into" anywhere in its memorandum and order dated August 7, 2018. Instead, we determined that it was undisputed that Dixon <u>signed</u> the Tuition Repayment Agreement on June 19, 2012 in Virginia when he clicked the "I Agree" button.

-11-

It was this document which was the subject of the action against him in the Court of Common Pleas.

Again, JSW's argument ignores the plain language of the relevant portion of the statute. As previously described, the Fair Debt Collection Practices Act provides that a debt collector shall bring an action on a debt "only in a judicial district or similar legal entity . . . in which such customer <u>signed</u> the contract sued upon[.]" 15 U.S.C. § 1692i(a)(2)(A) (emphasis added).[6] As we have stated, it is undisputed that the contract sued upon is the Tuition Repayment Agreement. JSW does not dispute that Dixon clicked the "I Agree" button on the Tuition Repayment Agreement for the first time on June 19, 2012 in Virginia. Thus, as we have previously held, he "signed the contract sued upon" on this date in Virginia where the zip code was 22308.

VI

Because the place where Dixon signed the contract was not actually litigated in the state court, Dixon's claim for violation of § 1692i is not barred by the doctrine of issue preclusion. JSW has not set forth an intervening change in the controlling law, new evidence, or the need to correct a clear error of law. See <u>Max's Seafood Cafe</u>, 176 F.3d at 667. We will

---

6. There are other venue provisions which are not relevant here.

deny the motion for reconsideration of this court's order dated August 7, 2018 entering summary judgment in favor of Dixon and against JSW on plaintiff's claim for violation of 15 U.S.C. § 1692i.